## Stephens *et al. versus* Downey.

1. It is the duty of the prothonotary to enter the final judgment in a suit on the judgment docket, if he neglects to do so, the attorney who has charge of the claim is not liable.

2. A claim in an attorney's hands was finally referred, a report filed and judgment *nisi* on the award entered in the judgment docket; the judgment *absolute* was entered in the appearance docket but not in the judgment docket, whereby it lost its lien. *Held*, that the attorney was not liable.

3. Suit was brought against the attorney more than six years after the judgment should have been entered. *Held*, that if there had been liability, it was barred by the Statute of Limitations.

ERROR to the Court of Common Pleas of *Greene county*.

This was an action of assumpsit, by Barzilla Stephens and Com-

modore P. Morris against Robinson W. Downey, alleging neglect of professional duty as attorney at law in relation to the collection of a judgment. The plaintiffs were the executors of James Stephens, deceased, and employed Mr. Downey as their counsel in settling the estate. Amongst other matters, a claim of the estate against one Isaac Shull was put into his hands for collection. The case was submitted by agreement to the final determination of three referees. By a rule of the Court of Common Pleas of Greene county, in reference to " Amicable Arbitrations," it is provided that " when the award of arbitrators or referees is filed, a judgment *nisi* may be entered in vacation by the prothonotary, or in term time, on motion, according to the terms of the submission, and notice thereof shall be given by the party intending to enforce the award to the adverse party or his attorney ; and the judgment shall become absolute and final unless reasons for setting aside the award shall be filed within four days after service of such notice," &c.

The referees reported in favor of the plaintiffs for $971.90. Their report was filed on the 18th of February 1854 ; same day judgment *nisi* was entered on the award and transferred to the judgment-docket. Notice was given of filing the award, and no exceptions having been filed, the prothonotary marked the judgment " *absolute*," on the appearance-docket, but did not note it on the judgment-docket. Shull sold his real estate to John B. Gordon on the 3d of March 1857, and a scire facias was issued by Mr. Downey on the judgment, February 28th 1859, with notice to Gordon.

After the sale by Shull to Gordon a number of judgments were entered against Gordon, under one of which the land was sold. The proceeds of sale having been brought into court for distribution, were appropriated to liens subsequent to the plaintiffs' judgment, which the auditor and court excluded. The decree of distribution was affirmed by the Supreme Court (Stephens' Executors' Appeal, 2 Wright 9), on the ground that the judgment was not a lien " as against subsequent judgment-creditors without entry on the lien-docket or actual notice."

The suit was commenced against Mr. Downey more than six years after February 28th 1854, and the default alleged was that he should have seen that the judgment had been duly entered on the judgment-docket after it had become absolute.

On the trial the defendant submitted the following as his 3d point :—

" The scire facias was issued within five years and in time to revive the judgment as it stood on the appearance-docket. But as the time was lost by the failure of the prothonotary to enter the judgment absolute on the award on the judgment-docket and the sale of the property to Gordon and intervention of judgments

[Stephens *v.* Downey.]

against him, the defendant is not liable for the loss occasioned by such failure, sale and intervention of other judgments."

The court (Gilmore, P. J.) affirmed the point, and there being a verdict for the defendant, the affirmance was assigned for error.

*Sayers & Buchanan*, for plaintiffs in error, cited Wood *v.* Reynolds, 7 W. & S. 406; Dearborn *v.* Dearborn, 15 Mass. R. 316.

*Black & Purman*, for defendant in error, cited Act of June 1836, relating to arbitrations, Purd. 50 *et seq.*, Pamph. L. 717; Britton *v.* Stanley, 1 Wh. 267; 1 Troub. & H. 553; Stephens' Executors' Appeal, 2 Wright 14; Act of March 29th 1827, § 3, Purd. 575; 9 Sm. L. 319; Mann's Appeal, 1 Barr 24; Updegraff *v.* Perry, 4 Id. 291.

The opinion of the court was delivered, January 7th 1867, by

Read, J.—In Stephens' Executors' Appeal, 2 Wright 9, in speaking of the judgment which forms the groundwork of the present action, my Brother Thompson uses this language: "The appellants' judgment was obtained under the provisions of the Act of 16th June 1836, regulating amicable arbitrations. The statute requires the submission to be approved by the court and judgment to be entered on the award, giving to the record, in the meantime, only the effect of a verdict of a jury.

"In Greene county there is a rule of court regulating the practice in amicable arbitrations, and it authorizes the prothonotary, on the award being filed, to enter judgment *nisi* thereon, and after four days' notice of the filing of the award by the party wishing to enforce it, he shall be entitled to have judgment absolute entered.

"The award was filed and judgment *nisi* entered on the 18th February 1854, and on the same day it was entered on the lien-docket; on the 28th of the month final judgment was entered, pursuant to notice, but no further entry was made in the lien-docket. It was conceded by the appellants' counsel that the judgment in the case was to be taken to be of the 28th of February, and that the judgment *nisi* did not constitute a lien. It is true he was forced to this by the fact that his sci. fa. would not be within five years, if the entry in the lien-docket was to be considered the entry of the judgment. From an examination of the provisions of the Amicable Arbitration Law, we are inclined to think he was right. The judgment *nisi* was but a step towards final judgment; and until the final step was taken by the terms of the act, the award was to have no greater effect than the verdict of a jury. The final step was not taken until the 28th of

[Stephens *v.* Downey.]

February 1854, when judgment absolute was entered.    It became a lien clear of all doubt then, only as between the parties.

"It seems to me that this excludes the idea of an anterior lien by virtue of an immature judgment:" and there can be no doubt that this is a true exposition of the law.

A scire facias was issued on this judgment on the 28th February 1859, and it is not contended by the plaintiffs' counsel that if the judgment was not entered and did not become a lien until the 28th February 1854, as we have already decided, that the writ was not in time.

If then the scire facias was in due time, is the defendant, as an attorney at law, liable for the error of the prothonotary in entering on the lien-docket only the judgment *nisi*, and not the final and only judgment in the suit?

It is made the express duty, by statute, of the prothonotary to do this, and if not done by him, the attorney is not liable for what is not his neglect but that of the officer of the law.

Besides, by the Statute of Limitations, the remedy, if there ever was any, is barred under the cases of Miller *v.* Wilson, 12 Harris 121, and Campbell's Adm'r. *v.* Boggs, 12 Wright 524, for his breach of duty occurred on the 28th February 1854, and it would be useless to send this case back for a new trial.

The defendant had shown himself a careful and diligent attorney and counsel, and had collected and paid over a considerable portion of the original judgment to the plaintiffs, as executor, and argued the case in 2 Wright for them with great ability, and it would seem harsh at this late day, for these plaintiffs to turn round and attempt to punish him for the error of an officer of the tribunal in which the judgment was obtained, and whose positive duty it was to have entered it on the judgment-docket.

Judgment affirmed.